UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALBERT O. PETERSON,<br><br>                  Plaintiff,<br><br>   v.<br><br>NATIONAL SECURITY TECHNOLOGIES, LLC,<br><br>                  Defendant. | NO: 12-CV-5025-TOR<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TO TRANSFER |

BEFORE THE COURT is Defendant's Motion to Change Venue (ECF No. 24). This matter was heard with oral argument on August 9, 2012. Jeffrey L. Needle appeared on behalf of Plaintiff. James M. Kalamon and Shamus T. O'Doherty appeared on behalf of Defendant. The court has reviewed the motion, the response, the reply, and is fully informed.

## BACKGROUND

Plaintiff, Albert Peterson, has sued his former employer, Defendant National Security Technologies, LLC, for racial discrimination in violation of 42 U.S.C.

ORDER DENYING MOTION TO DISMISS OR TO TRANSFER ~ 1

1  § 1981 and the Washington Law Against Discrimination ("WLAD").  Defendant
2  has moved to dismiss the case due to improper venue, or in the alternative, to
3  transfer the case to the District of Nevada pursuant to 28 U.S.C. § 1404(a).

### FACTS[1]

5  Defendant National Security Technologies, LLC ("NST") is a company that
6  specializes in the detection and mitigation of weapons of mass destruction.  In
7  addition to managing the Department of Energy's Nevada National Security Site,[2]
8  NST provides hazardous materials training to federal, state and local law
9  enforcement agencies across the country.  At all times relevant to this lawsuit,
10 NST's principal place of business was located in Las Vegas, Nevada.

---

[1] The following facts are drawn primarily from Plaintiff's complaint and will be accepted as true for purposes of this motion.

[2] The Nevada National Security Site, formerly known as the Nevada Test Site and the Nevada Proving Grounds, is located approximately 65 miles northwest of Las Vegas, Nevada.  According to the National Nuclear Security Administration, the NNSA's primary mission is to support the nation's nuclear stockpile.  *See* http://nnsa.energy.gov/mediaroom/factsheets/nnssfactsheet.

ORDER DENYING MOTION TO DISMISS OR TO TRANSFER ~ 2

Plaintiff was employed by NST from November 2004 to November 2011. During his tenure at NST, Plaintiff was responsible for training federal, state, and local first responders on how to detect and handle hazardous materials in the event of a terrorist attack or other emergency. These duties required Plaintiff to travel extensively throughout the western United States. Plaintiff was typically away from home on business travel approximately three weeks out of every month.

Shortly after joining NST as a full-time employee, Plaintiff obtained special permission from NST management to maintain his permanent residence in Richland, Washington. Although he was employed in the State of Nevada, NST allowed Plaintiff to reside in Richland so that Plaintiff's son could continue attending a local high school at which he was fully integrated. NST did, however, require Plaintiff to maintain an office at its corporate headquarters in Las Vegas and to travel there regularly.

On September 21, 2011, plaintiff received a copy of an email from another NST employee which he believed was racist and offensive. Plaintiff subsequently discussed the email with an African-American colleague, Frank Christian. Plaintiff and Mr. Christian agreed that Mr. Christian would report the offensive email to NST management, which Mr. Christian did later the same day. Shortly thereafter, the sender of the email resigned from NST for "personal reasons."

ORDER DENYING MOTION TO DISMISS OR TO TRANSFER ~ 3

1   On November 2, 2011, Plaintiff was called into a meeting with NST's
2   employee relations manager. During this meeting, Plaintiff was questioned
3   extensively about his knowledge of the racist email and his reasons for discussing
4   it with Mr. Christian. Plaintiff was also asked whether he was aware that Mr.
5   Christian and the sender of the email were not on good terms. Several days later,
6   NST officials informed Plaintiff on a conference call that his employment was
7   being terminated due to NST's lack of confidence in his management abilities.
8   Plaintiff resigned in lieu of being terminated on November 17, 2011.

9   Plaintiff filed this lawsuit on February 27, 2012 in the Eastern District of
10  Washington. Plaintiff's complaint alleges racial discrimination in violation of 42
11  U.S.C. § 1981 and a violation of the Washington Law Against Discrimination
12  ("WLAD"). Defendant has moved to dismiss the complaint due to improper
13  venue, or, in the alternative, for a transfer of this case to the District of Nevada
14  pursuant to 28 U.S.C. § 1404(a).

15                              DISCUSSION

16  **A. Venue in the Eastern District of Washington**

17  NST contends that venue in the Eastern District of Washington is improper
18  because "NST's contacts with the Eastern District of Washington are minimal."
19  ECF No. 25 at 7. The federal venue statute provides, in relevant part, that a
20  plaintiff may file a civil action "in a judicial district in which any defendant

resides." 28 U.S.C. § 1391(b)(1). Section 1391(c)(2), in turn, provides that, "an entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Thus, "[f]or purposes of the general venue statute, corporate defendants reside where they are subject to personal jurisdiction." *Caremark Theraputic Services v. Leavitt*, 405 F. Supp. 2d 454, 464 (S.D. N.Y. 2005).

NST is registered with the Washington Secretary of State and has appointed a registered agent to accept service of process on its behalf in the State of Washington. Plaintiff served the summons and complaint on NST's registered agent on March 5, 2012. ECF No. 4. Accordingly, NST is subject to this court's personal jurisdiction. Contrary to NST's assertions, 28 U.S.C. § 1391(d) does not apply because NST has expressly consented to personal jurisdiction in Washington by registering with the Secretary of State and appointing a registered agent to accept service of process on its behalf. *See The Rockefeller Univ. v. Ligand Pharm., Inc.*, 581 F. Supp. 2d 461, 465, 467 (S.D. N.Y. 2008) (holding that venue in the Southern District of New York was proper where corporate defendant had registered to do business with the Secretary of State of New York and appointed a registered agent to accept service of process on its behalf, thereby subjecting itself to personal jurisdiction in the state); *see also* 19A Charles A. Wright, et al.,

*Federal Practice & Procedure* § 1391 (2d ed.) (explaining that the "contacts-based [personal jurisdiction] standard was intended to be applied in a district-specific way only as to corporations *not already deemed resident for venue purposes in every district of a multidistrict state* based on the <u>statewide contacts of incorporation or licensing</u>") (italicized emphasis in original). NST's motion to dismiss is denied.

**B. Transfer Pursuant to 28 U.S.C. § 1404(a)**

Defendant has moved to transfer this case to the District of Nevada pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides for a discretionary transfer of a case to another judicial district "[f]or the convenience of parties and witnesses, in the interest of justice." When considering whether such a transfer is warranted, a court must make "an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The following factors are relevant to this analysis: (1) the place at which any agreements between the parties were negotiated and executed; (2) the state most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' respective contacts with the forum; (5) the contacts specific to the plaintiff's cause of action in the chosen forum; (6) the comparative costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the

existence of a forum selection clause; and (10) any public policy considerations specific to the forum state. *Id.* at 498-99. For the reasons discussed below, a balancing of these factors counsels against a discretionary transfer of this case to the District of Nevada.

1. Execution of Agreements Between the Parties

The record presently before the court does not indicate whether Plaintiff and Defendant entered into an employment agreement. If such an agreement exists, however, it is safe to assume that it was negotiated and/or executed in Nevada, the state in which Plaintiff was employed and in which NST maintained its "home office." This factor weighs in favor of a transfer to the District of Nevada.

2. State Most Familiar With Governing Law

Plaintiff has filed claims under 42 U.S.C. § 1981 and the Washington Law Against Discrimination ("WLAD"), RCW 49.60.210. The parties agree that this factor is neutral as to Plaintiff's § 1981 claim, but disagree over its relevance to Plaintiff's WLAD claim. Plaintiff argues that this court, sitting in the Eastern District of Washington, would be more familiar with the WLAD than a court sitting in the District of Nevada. Defendant maintains that both courts would be on equal footing with respect to this pendent state law claim.

Although a court sitting in the District of Nevada would certainly be capable of understanding and applying the Washington law, this court is undoubtedly more

ORDER DENYING MOTION TO DISMISS OR TO TRANSFER ~ 7

familiar with the WLAD. Contrary to Defendant's assertions, it is not "inappropriate . . . to assume that a federal judge sitting in the Eastern District of Washington would require less supplemental briefing on Washington state law than a federal judge sitting in the district of Nevada." ECF No. 37 at 10. To the contrary, it is entirely appropriate to assume that a federal district court will develop a certain expertise in applying the substantive law of the state in which it sits. Indeed, this court has several WLAD cases on its docket, one of which proceeded to a jury trial two months ago. This factor weighs in Plaintiff's favor.

### 3. Plaintiff's Choice of Forum

Not surprisingly, the parties disagree about how much deference should be afforded to Plaintiff's choice of forum. Defendant argues that this factor has little bearing on the § 1404(a) analysis in general, and is entitled to even less weight when the action has only a slight connection with the chosen forum. Plaintiff counters that his choice of forum is entitled to substantial deference and must not be disturbed absent a "strong showing" of inconvenience by NST.

The court disagrees with NST's assertion that a plaintiff's choice of forum "bears little weight" on a transfer of venue request. Under § 1404(a), "*great weight is generally accorded plaintiff's choice of forum.*" *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (emphasis added) (unless the operative facts have not occurred within the forum and the forum has no interest in the parties or subject

ORDER DENYING MOTION TO DISMISS OR TO TRANSFER ~ 8

matter). It is for this reason that a defendant seeking a change of venue pursuant to § 1404(a) must "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

However, a plaintiff's choice of forum is not entitled to substantial deference in all circumstances. As NST correctly notes, courts generally afford less deference to a plaintiff's choice of forum "[w]here the action has little connection with the chosen forum." *Amazon v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005); *see also Brannen v. Nat'l R. R. Passenger Corp.*, 403 F. Supp. 2d 89, 93 (D. D.C. 2005) ("[D]eference to the plaintiff's choice of forum is mitigated where the plaintiff's choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter."). Here, the only connection between this lawsuit and the Eastern District of Washington is that Plaintiff resides in Richland, Washington. Given that Plaintiff's causes of action do not arise from NST's contacts with this district, the court will afford only slight deference to Plaintiff's choice of forum.

    4. <u>Parties' Respective Contacts</u>

The parties have devoted extensive briefing to NST's contacts with the State of Washington as a whole and the Eastern District of Washington in particular. As an initial matter, the court concludes that the only relevant contacts for purposes of

matter). It is for this reason that a defendant seeking a change of venue pursuant to § 1404(a) must "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

However, a plaintiff's choice of forum is not entitled to substantial deference in all circumstances. As NST correctly notes, courts generally afford less deference to a plaintiff's choice of forum "[w]here the action has little connection with the chosen forum." *Amazon v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1260 (W.D. Wash. 2005); *see also Brannen v. Nat'l R. R. Passenger Corp.*, 403 F. Supp. 2d 89, 93 (D. D.C. 2005) ("[D]eference to the plaintiff's choice of forum is mitigated where the plaintiff's choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter."). Here, the only connection between this lawsuit and the Eastern District of Washington is that Plaintiff resides in Richland, Washington. Given that Plaintiff's causes of action do not arise from NST's contacts with this district, the court will afford only slight deference to Plaintiff's choice of forum.

    4. <u>Parties' Respective Contacts</u>

The parties have devoted extensive briefing to NST's contacts with the State of Washington as a whole and the Eastern District of Washington in particular. As an initial matter, the court concludes that the only relevant contacts for purposes of

ORDER DENYING MOTION TO DISMISS OR TO TRANSFER ~ 9

NST's § 1404(a) motion are its contacts with the Eastern District of Washington. Given that Plaintiff filed this lawsuit in the Eastern District of Washington, NST's contacts with other areas of the state (*i.e.*, the Western District of Washington) are irrelevant.

Having reviewed the parties' submissions, the court concludes that NST's contacts with the Eastern District of Washington are rather limited. Although NST conducted approximately twenty training courses in Washington from 2008 to 2010, only one of those courses was conducted within the Eastern District. ECF No. 26 at ¶ 4. This course lasted two days and was attended by thirteen students. ECF No. 26 at ¶¶ 4-5. NST also sent some of its employees to be trained at a facility owned by a third party in Richland, but it is unclear how often these training sessions occurred.[3] Plaintiff also avers that he "made numerous contacts with local responders in both Eastern and Western Washington" in order to generate new business for NST. ECF No. 33 at ¶ 16. Finally, it is undisputed that Plaintiff was the only NST employee who resided in the State of Washington and was at times allowed to work from home.

---

[3] NST asserts that its employees were sent to Richland for training "in unique situations occurring rarely," (ECF No. 26), while Plaintiff contends that this occurred "approximately every other month." (ECF No. 33 at ¶ 15).

ORDER DENYING MOTION TO DISMISS OR TO TRANSFER ~ 10

The parties' contacts with the District of Nevada, by contrast, are extensive. Despite the fact that he resided in the Washington, Plaintiff was employed in Nevada during his entire tenure with NST. Plaintiff maintained an office at NST's headquarters in Las Vegas and traveled there regularly. NST is principally based in Las Vegas and employs approximately 2,800 people in Nevada. It also manages the Nevada National Security Site outside of Las Vegas and devotes a substantial portion of its resources to that endeavor. In short, NST is deeply entrenched in the District of Nevada and has very few direct connections to the Eastern District of Washington. This factor weighs in NST's favor.

### 5. Contacts Specific to Plaintiff's Cause of Action

As discussed above, NST has no contacts with the Eastern District of Washington specific to Plaintiff's cause of action. Accordingly, this factor weighs in favor of a transfer to the District of Nevada.

### 6. Comparative Costs of Litigation

Plaintiff's primary argument with respect to the comparative costs of litigation is that NST, as a large corporation, "is in a far better position to incur the costs of a trial in a foreign forum than Plaintiff." ECF No. 32 at 16. According to Plaintiff, "[a] trial in Spokane, Washington would be no more onerous to the Defendant than conducting a routine [out-of-state] training course" for one of its customers. ECF No. 32 at 16.

The court agrees that the parties' respective abilities to absorb the costs of litigation in either district is a relevant consideration. *See Boateng v. General Dynamics Corp.*, 460 F. Supp. 2d 270, 275 (D. Mass. 2006) ("[T]he balance of convenience focuses on the comparative financial abilities of the parties and the cost of litigation should be borne by the party in the best position to absorb and spread it."). Indeed, the "interests of justice" require that the court consider whether financial constraints on either party could unfairly impact the outcome of the case.

Here, the court concludes that it would be marginally more expensive to litigate this case in the Eastern District of Washington than in the District of Nevada. NST has identified eleven fact witnesses, all of whom reside in Nevada. Plaintiff apparently intends to call witnesses who reside in this district to testify about his "emotional distress," but has not specifically identified those witnesses. Thus, on the present record, the court concludes that it would be more expensive for NST's eleven fact witnesses to travel to the Eastern District of Washington for trial than it would be for Plaintiff and his unidentified "emotional distress" witnesses to travel to the District of Nevada.

Nevertheless, the court agrees with Plaintiff that requiring NST to bear the marginally higher cost of litigating in this district would not impose a significant burden. As a medium-sized corporation, NST has undoubtedly factored the

ORDER DENYING MOTION TO DISMISS OR TO TRANSFER ~ 12

anticipated costs of litigation into its operating budget. Plaintiff, by contrast, has no such funds reserved. Requiring him to travel to the District of Nevada for trial would essentially shift the added expense onto his shoulders. Under these specific circumstances, the interests of justice counsel against a transfer. *See Decker*, 805 F.2d at 843 (denying § 1404(a) transfer where "the transfer would merely shift rather than eliminate the inconvenience").

### 7. Availability of Compulsory Process

Federal Rule of Civil Procedure 45(c)(3) provides that a court must, on a timely motion, quash a subpoena issued to any person who resides more than 100 miles away from the location at which he or she has been ordered to appear. In this case, both parties have witnesses who reside more than 100 miles away from the other's "home" forum. Accordingly, this factor is neutral.

### 8. Access to Sources of Proof

NST argues that this case should be litigated in the District of Nevada because all of the events in question occurred in Nevada and because all of the documentary evidence pertaining to Plaintiff's claims is located in Nevada. While that may be true, the evidence in this case does not appear to be particularly voluminous or otherwise difficult to access from the Eastern District of Washington. As Plaintiff correctly notes, all documentary evidence can be reduced to electronic form for ease of transmission between the parties. There is no reason

why Plaintiff should be required to litigate his case in the District of Nevada simply because NST maintains its employment records and other files there. The court finds that this factor is neutral. *See Walker v. John Renau Collection, Inc.*, 423 F. Supp. 2d 115, 118 n. 3 (S.D. N.Y. 2005) ("The location of documents is neutral in today's era of photocopying, fax machines and Federal Express.") (internal quotation and citation omitted).

### 9. Forum Selection Clause

The court is unaware of any written employment contract containing a forum selection clause. Accordingly, the court will treat this factor as neutral.

### 10. Public Policy Considerations

Defendant has not specifically addressed public policy considerations in the two competing forums. Plaintiff, for his part, argues that the State of Washington has a substantial interest in having WLAD claims adjudicated within its borders. The Washington State Legislature has declared that "practices of discrimination against any of its inhabitants because of race, creed, color, national origin . . . are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state." RCW 49.60.010. The Washington Supreme Court has similarly recognized that the WLAD "contains a sweeping policy statement strongly condemning many forms of discrimination," and that the statute embodies

ORDER DENYING MOTION TO DISMISS OR TO TRANSFER ~ 14

public policy "of the highest priority." *Allison v. Hous. Auth. of City of Seattle*, 118 Wash.2d 79, 85, 86 (1991). This court agrees that Washington has a substantial interest in having WLAD claims adjudicated within Washington. Accordingly, this factor counsels against transferring this case to the District of Nevada.

On balance, the factors discussed above weigh slightly in Plaintiff's favor. Although the margin is slight, the court finds that any inconvenience to the parties and witnesses is not significant enough to warrant a transfer to the District of Nevada. For purposes of NST's §1404(a) motion, the question is not simply whether NST has identified a marginally more convenient forum. Rather, the appropriate inquiry is whether requiring NST to litigate in this district would be so inconvenient that the interests of justice require a transfer. That standard has not been satisfied here.

The court's decision to retain the case in this district is based in large part upon its belief that the parties will be able to minimize costs and inconvenience to themselves and non-party witnesses through sensible discovery practices and the use of modern technology. To the extent that the court can assist the parties in minimizing costs and inconvenience, it will do so.

//

//

ORDER DENYING MOTION TO DISMISS OR TO TRANSFER ~ 15

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendant's Motion to Change Venue (ECF No. 24) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 9th day of August, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge