UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALBERT O. PETERSON,<br><br>               Plaintiff,<br><br>   v.<br><br>NATIONAL SECURITY<br>TECHNOLOGIES, LLC,<br><br>               Defendant. | NO:  12-CV-5025-TOR<br><br>ORDER ON CROSS-MOTIONS FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the following motions: Plaintiff's Motion For Summary Judgment (ECF No. 67); Plaintiff's Motion for Summary Judgment on Defendant's Affirmative Defenses (ECF No. 71); and Defendant's Motion for Summary Judgment (ECF No. 75).  These matters were heard with oral argument on April 19, 2013.  Plaintiff was represented by Jeffrey L. Needle.  Defendant was represented by James M. Kalamon and Shamus T. O'Doherty.  The Court has reviewed the briefing and the record and files herein, and is fully informed.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

BACKGROUND

The parties have filed cross-motions for summary judgment on Plaintiff's

retaliation claims under 42 U.S.C. § 1981 and the Washington Law Against

Discrimination ("WLAD").  Plaintiff also seeks summary judgment on

Defendant's after-acquired evidence affirmative defense.  Finding that genuine

issues of material fact preclude summary judgment in favor of either party, the

Court will deny all three motions.

FACTS

Plaintiff Albert Ole Peterson ("Plaintiff") is a former course instructor for

Defendant National Security Technologies, LLC. ("Defendant").  In his role as a

course instructor, Plaintiff traveled throughout the western United States teaching

law enforcement and first responders how to respond to a major terrorist attack.

Because of his rigorous travel schedule, Plaintiff was permitted to reside in

Richland, Washington, and periodically commute to Defendant's corporate

headquarters near Las Vegas, Nevada.

On September 20, 2011, Plaintiff was teaching a course with several fellow

instructors in Nevada.  During a break, one of Plaintiff's colleagues, Mario

Guerrero ("Guerrero") stopped to check his email messages.  As he read his

messages, Guerrero came across a racist email sent by a fellow employee, Richard

Folle ("Folle").  ECF No. 69-4 at 4-9.  Guerrero commented on the email and

showed it to Plaintiff and another instructor, Curt Wargo.  All three agreed that the email was racist and that Folle could be disciplined for having sent it.

Later that day, Peterson called one of his subordinates, Frank Christian ("Christian") and told him about the email.  Christian, who is black, was offended. Peterson and Christian purportedly agreed that Folle's behavior was inappropriate and that it needed to stop.  To that end, Christian agreed to formally report the email to management.  In Plaintiff's estimation, having Christian report the email "would carry greater weight than if he reported it directly."  ECF No. 68 at ¶ 28.

Upon receiving the complaint, one of Defendant's human resources managers, Fannie Bell ("Bell"), opened a formal investigation.  Bell contacted Christian, spoke to him about the email, and asked him to obtain a copy.  Peterson subsequently obtained a printed copy of the email and provided it to Christian,[1] who in turn provided it to Bell.  Shortly thereafter, Folle resigned his employment in lieu of being terminated.

Approximately one month later, Guerrero met with one of his supervisors, Bruce Chisholm ("Chisholm"), to discuss the fallout from the email.  During this

---

[1] How Peterson obtained a copy of the email is disputed.  Peterson asserts that Guerrero provided him a copy.  Guerrero insists that Peterson printed a copy from his computer after he refused to provide one.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 3

meeting, Guerrero expressed concern that Plaintiff may have reported the email with the ulterior motive of increasing his own job security.  In Guerrero's view, Plaintiff's objective in reporting the email was to eliminate a competitor for future advancement opportunities and/or to minimize his chances of being laid off during a future force reduction.  Guerrero also informed Chisholm that Plaintiff routinely left training sessions early and billed the company for time that he did not actually work.  Chisholm promptly forwarded these concerns to Bell for investigation.

Over the next several days, Bell interviewed Plaintiff, Christian and Guerrero about how the email came to be reported.  Plaintiff denied having any ulterior motive, explaining that he had chosen to involve Christian because he believed that the email would be "swept under the rug" if he reported it to management directly.  Christian generally corroborated this account.  Guerrero, on the other hand, accused Plaintiff of making statements to the effect that his job was now more secure with Folle out of the picture.  Guerrero further reiterated that Plaintiff was cheating the company by submitting hours in excess of what he had actually worked.  He also stated that he had witnessed Plaintiff coaching one of his subordinates, Tyler Bello ("Bello") on how to submit fraudulent timecards and expense reports.  ECF No. 72 at ¶ 17.

Ultimately, Bell concluded that Plaintiff had reported the email for the express purpose of getting Folle fired.  In her final report, Bell wrote:

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 4

> Based on [my] investigation, Peterson had selfish and unethical motives for giving the email to Christian. The ulterior motive was for Folle to lose his job therefore creating job security for Peterson as the only Course Director in the West. The email was so inappropriate that had it surfaced by any other means, it would no doubt have had the same result for Folle. Therefore, Peterson deliberately took advantage of an unfortunate situation and used the email in an effort to accelerate his coworker's departure from the company. Peterson's actions are more despicable than the email. The email lacked normal intelligence. Peterson was ruthless. He insidiously undermined the trust and confidence placed upon him by his management and team members while degrading the spirit of the team. [The Employee Relations Department] recommends termination.

ECF No. 69-5 at 9.

On November 17, 2011, Defendant's Discipline Action Review Board ("Board") met to discuss potential discipline. After reviewing the results of Bell's investigation, the Board concluded that Plaintiff's report of the racist email warranted termination. In its view, this conduct had caused management "to lose trust and faith in Peterson." ECF No. 65-5 at 16-17. Because the investigation into the timecard-related allegations was still ongoing, the Board did not consider those allegations in reaching its decision. Defendant subsequently offered Plaintiff an opportunity to resign in lieu of being terminated, which Plaintiff accepted. This lawsuit followed.

## DISCUSSION

Summary judgment may be granted upon a showing by the moving party "that there is no genuine dispute as to any material fact and that the movant is

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 5

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id.* at 248.  A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  In ruling on a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Finally, the court may only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

**A. *McDonnell Douglas* Burden Shifting vs. "Motivating Factor" Model**

As a threshold matter, the Court must decide whether Plaintiff's retaliation claims should be evaluated under the familiar *McDonnell Douglas* burden shifting framework or the so-called "motivating factor" model used in mixed-motive cases.

1  Plaintiff maintains that he is entitled to use the motivating factor model, while

2  Defendant contends that the *McDonnell Douglas* analysis must be used.

3      As the Ninth Circuit explained in *Metoyer v. Chassman*, the plaintiff in a

4  race discrimination case need not rely upon the presumption of discrimination

5  arising under *McDonnell Douglas*.[2]  504 F.3d 919, 931 (9th Cir. 2007).  Instead,

6  the plaintiff may forego the *McDonnell Douglas* presumption altogether and offer

7  *direct proof* of discrimination:

8      Typically, we apply the burden-shifting framework established in
       *McDonnell Douglas* [to race discrimination claims under § 1981].
9      But [while] the *McDonnell Douglas* burden shifting framework is a
       useful tool to assist at the summary judgment stage[,] nothing compels
10     the parties to invoke the *McDonnell Douglas* presumption.  Instead,
       when responding to a summary judgment motion[,] the plaintiff may

11

12  [2] Under the *McDonnell Douglas* framework, a plaintiff who establishes a prima

13  facie case of discrimination is entitled to a presumption that the employer acted

14  with discriminatory intent.  The employer may rebut the presumption by

15  articulating a legitimate, non-discriminatory reason for the plaintiff's termination.

16  Once the presumption has been rebutted, the parties are back on "equal footing."

17  Because the plaintiff bears the ultimate burden of proof at trial, however, he must

18  further demonstrate that the employer's proffered reason was a mere pretext for

19  discrimination in order to survive summary judgment.  *See generally Cornwell v.*

20  *Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 7

proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer.

*Id.* at 930-31 (internal quotations and citations omitted); *see also Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856 (9th Cir. 2002) (en banc) ("It is important to emphasize . . . that nothing compels the parties to invoke the *McDonnell Douglas* presumption. Evidence can be in the form of the *McDonnell Douglas* prima facie case, or other sufficient evidence—direct or circumstantial—of discriminatory intent."). This approach may be used in either "single motive" or "mixed-motive" discrimination cases. *See Costa*, 299 F.3d at 855 ("[A]lthough *McDonnell Douglas* may be used where a single motive is at issue, this proof scheme is not the exclusive means of proof in such a case.").

Here, Plaintiff has elected to forego the *McDonnell Douglas* presumption. ECF No. 67 at 5. Accordingly, Plaintiff's burden on summary judgment is simply to produce "direct or circumstantial evidence" of unlawful retaliation. *Metoyer*, 504 F.3d at 931. Because the *McDonnell Douglas* burden shifting framework need not apply, Plaintiff is not required to establish a "prima facie case" or demonstrate that any "legitimate, non-discriminatory reasons" proffered by Defendant are mere pretexts for retaliation.

**B. Section 1981 Retaliation Claim**

Plaintiff claims that Defendant retaliated against him for opposing a racially discriminatory employment practice in violation of 42 U.S.C. § 1981. To prevail on this claim, Plaintiff must prove that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between his protected activity and the adverse employment action. *Surrell v. California Water Svc. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008); *see also CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451 (2008) (holding that § 1981 provides a cause of action for retaliation).

In the instant motion, Defendant contends that Plaintiff cannot prevail on the protected activity element of his claim because he lacked an objectively reasonable belief that a single offensive email from one employee to another amounted to an unlawful "employment practice." Defendant further challenges Plaintiff's ability to prove the causation element of his claim, arguing that (1) retaliatory animus was not a "motivating factor" in its decision to terminate Plaintiff's employment; and (2) to the extent that retaliatory animus *was* a motivating factor, it would have made the same termination decision even in the absence of an impermissible retaliatory motive (the so-called "same decision" affirmative defense).

Plaintiff, for his part, asserts that Defendant's same decision defense fails as a matter of undisputed material fact.  Specifically, Plaintiff argues that the conduct upon which Defendant relies—the manner in which Plaintiff opposed the email—was not so disruptive as to render his conduct unprotected under the rationale first articulated in *Hochstadt v. Worcester Found. For Experimental Biology*, 545 F.2d 222 (1st Cir. 1976).  According to Plaintiff, no rational jury could find that his act of reporting of the email "down the chain" to a subordinate rather than "up the chain" to a superior was sufficiently egregious to provide Defendant with an independent lawful basis for termination.  The Court will address each of these issues below.

1.  <u>Was Plaintiff Engaged in Protected Activity?</u>

Defendant challenges Plaintiff's ability to prove that he was engaged in protected activity on the ground that Plaintiff lacked an objectively reasonable belief that the discrimination which he opposed—a single racially offensive email sent by one employee to another—qualified as an unlawful employment practice.  ECF No. 75 at 6-9.  As the parties correctly note, the protection afforded by § 1981 is not limited to plaintiffs who oppose an employment practice that *actually* violates the law.  Rather, the statute's protection extends to those who *reasonably believe* that the employer's actions violate the law.  *See Trent Valley Elec. Ass'n, Inc.*, 41 F.3d 524, 526 (9th Cir. 1994) (to establish protected activity for purposes

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 10

1  of a retaliation claim, "a plaintiff does not need to prove that the employment

2  practice at issue was in fact unlawful;" rather, the plaintiff "must only show that

3  [he] had a 'reasonable belief' that the employment practice [he] protested was

4  prohibited"); *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir.

5  1983) ("It is not necessary . . . that the practice be demonstrably unlawful;

6  opposition clause protection will be accorded whenever the opposition is based on

7  a 'reasonable belief' that the employer has engaged in an unlawful employment

8  practice.").  The plaintiff's belief that the opposed practice is unlawful must be

9  both objectively and subjectively reasonable.  *Moyo v. Gomez*, 40 F.3d 982, 984-85

10 (9th Cir. 1994) (noting that a plaintiff's belief must be both objectively reasonable

11 and held in good faith).

12        Here, there is a triable issue of fact as to whether Plaintiff was engaged in

13 protected opposition activity.  Contrary to Defendant's assertions, a rational jury

14 could find that Plaintiff reasonably believed that the racist email violated § 1981.

15 Notably, there is evidence that the sender of the email, Richard Folle, had been the

16 subject of at least one prior racial discrimination complaint lodged by Frank

17 Christian.  ECF No. 79 at ¶¶ 1-2.  There is also evidence that Folle routinely made

18 racially insensitive remarks in the workplace—some of which were reported to

19 management, but none of which resulted in discipline.  ECF No. 68 at ¶¶ 10-12.

20

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 11

According to Plaintiff, "everybody complained about Folle at times, and nothing seemed to change."  ECF No. 68 at ¶ 12.

When viewed in the light most favorable to Plaintiff, this evidence lends credibility to Plaintiff's explanation that he reported the email "in a way that would carry the most weight."  ECF No. 76 at ¶ 20.  This evidence is also sufficient to distinguish the instant case from *Little v. United Techs.*, 103 F.3d 956 (11th Cir. 1997).  Unlike the single statement at issue in *Little*, the email in this case was preceded by several complaints to management about the offending employee.  In light of these prior complaints, the Court cannot conclude as a matter of law that Plaintiff lacked an objectively reasonable belief that Folle's email amounted to an unlawful employment practice.  Thus, Defendant is not entitled to summary judgment on this issue.

Conversely, there is ample evidence from which a jury could find that Plaintiff lacked a reasonable belief that he was engaging in protected opposition activity.  While Plaintiff claims to have provided the email to Christian with the expectation that Christian would report it to management, a rational jury could find that Plaintiff merely intended to "stir the pot" and did not care whether the email was actually reported.  The fact that Plaintiff went out-of-process to provide the email to Christian—a black employee with a history of filing race discrimination complaints against Folle—would seem to support such a finding.  Moreover, a

1  rational jury could also find that Plaintiff did not subjectively believe that Folle's

2  email amounted to a discriminatory "employment practice."  As Defendant

3  correctly notes, there is reason to question whether a reasonable person would view

4  a single private email sent from one employee to another as an act of corporate

5  discrimination.  Accordingly, the Court will deny Plaintiff summary judgment on

6  this issue.

7      2.  <u>Was Plaintiff's Protected Activity a "Motivating Factor" in</u>

8  <u>Defendant's Termination Decision?</u>

9      Plaintiff has advanced a "mixed-motive" theory of liability, arguing that he

10  was terminated for both retaliatory and non-retaliatory reasons.  Specifically,

11  Plaintiff contends that he was terminated because he opposed a racially offensive

12  email and was found to have done so with the ulterior motive of increasing his own

13  job security and in a manner which violated Defendant's reporting policy.  In order

14  to satisfy the third element of his retaliation claim under such a theory, Plaintiff

15  must prove that his opposition to the racially offensive email was a "motivating

16  factor" in Defendant's decision to terminate his employment.  *Metoyer*, 504 F.3d at

17  939.

18      The Court finds that there is sufficient evidence to support a finding that

19  Plaintiff's opposition to the email was a motivating factor in Defendant's

20  termination decision.  Indeed, when viewed in the light most favorable to Plaintiff,

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 13

the evidence suggests this was the only factor which prompted the termination; had Plaintiff not reported the email, he would not have been fired.  Although Defendant maintains that Plaintiff was terminated solely because of the *manner* in which he reported the email—rather than the *fact* that he had reported it—a rational jury could conclude that the fact of reporting played a role in Defendant's decision.

On the other hand, a rational jury could find Defendant's explanation fully credible.  When viewed in the light most favorable to Defendant, the evidence suggests that Plaintiff was fired not because he chose to report the email in the first instance, but because of the highly unorthodox manner in which he chose to report it.  Defendant's witnesses have indicated that Plaintiff would not have been terminated (or subjected to any other adverse employment action) had he simply followed company policy by reporting the email "up the chain" to his superiors and/or Defendant's human resources department rather than "down the chain" to a subordinate employee.  If a jury finds this explanation credible, Plaintiff will likely not be able to establish that retaliatory animus was a motivating factor in the termination decision.  At bottom, the causal relationship between Plaintiff's protected activity and Defendant's adverse employment action is an issue which must be decided by the trier of fact.

///

///

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 14

3.  <u>Would Defendant Have Made the Same Decision to Terminate</u>

<u>Plaintiff Absent a Retaliatory Motive?</u>

As noted above, the parties have raised two issues relevant to Defendant's same decision affirmative defense: (1) whether Defendant can prove that it would have terminated Plaintiff's employment even in the absence of an impermissible retaliatory motive (*i.e.*, whether there is an independent "but for" cause of Plaintiff's termination); and (2) whether the independent conduct relied upon by Defendant—the manner in which Plaintiff reported the email—was sufficiently disruptive to render Plaintiff's opposition activity unprotected.  The Court will address each of these issues in turn.

a.  *Can Defendant Demonstrate an Independent, Non-*

*retaliatory "But For" Cause For Termination?*

In advancing a "mixed-motive" theory of liability, Plaintiff has opened the door to the so-called "same decision" affirmative defense: that the employer would have taken the same adverse employment action even in the absence of a discriminatory motive.  *Costa*, 299 F.3d at 848.  In the context of a retaliation claim, this defense acts as a complete bar to liability; if the employer can prove by a preponderance of the evidence that retaliatory animus was not a "but for" cause of the adverse employment action, the employer is entitled to judgment in its favor. *Costa*, 299 F.3d at 862-63; *Metoyer*, 504 F.3d at 934.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 15

The parties dispute whether Defendant can prevail on this defense at trial. Plaintiff asserts that his alleged ulterior motive in reporting the email was not a "but for" cause of his termination because "Defendant's witnesses have repeatedly admitted that, *regardless of Plaintiff's motive* for reporting the email, he would not have been terminated from employment if he had delivered the email directly to Human Resources instead of Frank Christian." ECF No. 67 at 12 (emphasis added). In other words, Plaintiff contends that his motivation in reporting the email did not factor into Defendant's decision because he would not have been terminated—regardless of his ulterior motives—had he simply reported the email through the proper channels. According to Plaintiff, this evidence proves that it was his *act of reporting* the email, rather than his reasons for doing so, which was the "but for" cause of his termination.

Defendant counters that Plaintiff's act of reporting the email and his reasons for doing so must be considered together as a single "but for" cause of his termination. ECF No. 78 at 7-8. Under its theory of the case, Plaintiff was terminated because Defendant's senior leadership had lost trust in Plaintiff's ability to manage others. This loss of trust was not simply the result of Plaintiff *either* acting in his own best interest *or* of reporting discrimination out of process; rather the loss of trust was the result of Plaintiff acting in his own best interest *by*

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 16

1    reporting discrimination out of process.  This overall loss of trust, Defendant

2    argues, is the only "but for" cause of Plaintiff's termination.

3         The Court finds Defendant's argument problematic in that it necessarily

4    relies upon Plaintiff's subjective motivation for reporting the email.  As Plaintiff

5    notes, there is reason to question whether an employee's subjective motivation for

6    engaging in otherwise protected activity can deprive the employee of protection

7    from retaliation.  Indeed, allowing an employer to defend against a retaliation

8    claim on the ground that the employee acted with an "ulterior motive" would open

9    the floodgates to litigation of this issue in virtually every case.  The reality of the

10   modern workplace is that an employee who formally complains about another

11   employee's conduct often stands to benefit, either directly or indirectly, from any

12   resulting discipline.  *See E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008,

13   1014 (9th Cir. 1983) ("Almost every form of "opposition to an unlawful

14   employment practice" is in some sense "disloyal" to the employer, since it entails a

15   disagreement with the employer's views and a challenge to the employer's

16   policies.").  In the context of a retaliation claim, requiring an employee to

17   demonstrate that he or she could not have personally benefitted from the protected

18   activity makes little sense.  There is no such requirement in the text of the

19   applicable statutes, and the Court can discern no other reason for imposing one.

20

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 17

1    Despite this apparent deficiency, however, the Court finds that Defendant

2  has presented sufficient evidence to withstand summary judgment.  As Defendant

3  correctly notes, "[t]he mixed-motive inquiry is an intensely factual one."  *Metoyer*,

4  504 F.3d at 940 (quotation and citation omitted).  For that reason, "same decision"

5  defenses in mixed-motive cases "are generally for the jury to decide."  *Id.*  As

6  discussed above, there are genuine issues of material fact concerning whether

7  Defendant was motivated by retaliatory animus or whether it simply viewed

8  Plaintiff's reporting of the email "down the chain" as an unacceptable violation of

9  company policy.  Accordingly, a jury must decide the "but for" cause of Plaintiff's

10  termination.  The parties' cross-motions for summary judgment on this issue are

11  denied.

12    b.  *Is there an Issue of Material Fact Concerning the*

13    *Disruptiveness of Plaintiff's Opposition Activity?*

14    Plaintiff's final argument on summary judgment is that the manner in which

15  he opposed the racist email was not sufficiently disruptive to render his conduct

16  unprotected.  In support of this argument, Plaintiff relies primarily upon *E.E.O.C.*

17  *v. Crown Zellerbach Corp.* for the proposition that an employee may not be

18  disciplined for engaging in protected activity unless the employee's actions

19  "significantly disrupted the workplace and sometimes directly hindered his or her

20  job performance."  720 F.2d 1008, 1015 (9th Cir. 1983) (citing *Hochstadt v.*

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 18

*Worcester Found. For Experimental Biology*, 545 F.2d 222 (1st Cir. 1976)). According to Plaintiff, no rational jury could find that Plaintiff's act of reporting the email "down the chain" to a subordinate rather than "up the chain" to a superior satisfies this standard.  ECF No. 67 at 13-19; ECF No. 81 at 9-11.

As an initial matter, the Court must address Plaintiff's argument that a termination due to significant disruption of the workplace is an affirmative defense which must be specifically pled pursuant to Federal Rule of Civil Procedure 8(c). Having reviewed Plaintiff's authorities, the Court finds nothing to suggest that this is an "affirmative defense" within the province of Rule 8(c).  Rather, these cases uniformly treat significant workplace disruption as an issue which an employer may raise as a "legitimate, non-discriminatory reason" in the context of the *McDonnell Douglas* burden shifting analysis.  *See, e.g.*, *Crown Zellerbach Corp.*, 720 F.2d at 1014; *Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1354-56 (9th Cir. 1984).  Plaintiff does not suggest that a defendant must affirmatively plead each and every legitimate, non-discriminatory reason it intends to offer in response to a discrimination claim, and the Court has been unable to locate any authority for such a requirement.  In any event, the Court finds that Plaintiff has been on adequate notice of Defendant's intent to pursue this issue and therefore has not been unduly prejudiced by its omission from Defendant's answer.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 19

1    With regard to Plaintiff's substantive arguments, the Court finds that

2    summary judgment is inappropriate for two reasons.  First, the "significant

3    workplace disruption" doctrine first articulated in *Hochstadt* is not as narrow as

4    Plaintiff contends.  Although *Crown Zellerbach Corp.* cites "interference with job

5    performance" as the touchstone of significant workplace disruption, several other

6    cases have taken a broader view.  Specifically, the Ninth Circuit has consistently

7    cited *Hochstadt* for the proposition that "[a]n employee's opposition activity is

8    protected only if it is 'reasonable in view of the employer's interest in maintaining

9    a harmonious and efficient operation.'"  *O'Day v. McDonnell Douglas Helicopter*

10   *Co.*, 79 F.3d 756, 763 (9th Cir. 1996) (citing *Silver v. KCA, Inc.*, 586 F.2d 138, 141

11   (9th Cir. 1978)); *see also Wrighten*, 726 F.2d at 1356 n. 6 (same).  These cases

12   clearly illustrate that impaired job performance is not the only measure of

13   unreasonable opposition.  *See O'Day*, 79 F.2d at 763 (manner of opposition

14   unreasonable where employee "committed a serious breach of trust . . . [by]

15   rummaging through his supervisor's office for confidential documents [and later]

16   showing them to a co-worker"); *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th

17   Cir. 1985) (manner of opposition unreasonable where employee's complaint to a

18   third party "violated an explicit company directive [and] contained false

19   allegations of misconduct").  Hence, the absence of an adverse impact on

20   Plaintiff's job performance is not dispositive.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 20

1       Moreover, at least two Ninth Circuit cases applying *Hochstadt* have held

2  that an employee may not use his or her participation in protected activity as an

3  excuse to violate corporate policy. *See O'Day*, 79 F.3d at 763-64 ("The opposition

4  clause protects reasonable attempts to contest an employer's discriminatory

5  practices; it is not an insurance policy, *a license to flaunt company rules* or an

6  invitation to dishonest behavior.") (emphasis added); *Unt*, 765 F.2d at 1446 ("An

7  employee is not protected by Title VII when he *violates legitimate company rules*,

8  knowingly disobeys company orders, disrupts the work environment of his

9  employer, or willfully interferes with the attainment of the employer's goals.")

10  (emphasis added).  As discussed above, it is undisputed that Plaintiff violated

11  Defendant's discrimination reporting policies by reporting the email "down the

12  chain" to a subordinate rather than "up the chain" to a superior.  It is further

13  undisputed that the subordinate to whom Plaintiff reported the email had

14  previously complained to Defendant about the sender engaging in inappropriate

15  racist behavior.  A jury must decide whether this admitted violation of corporate

16  policy was "reasonable in view of [Defendant's] interest in maintaining a

17  harmonious and efficient operation."  *O'Day*, 79 F.3d at 763 (quotation and

18  citation omitted).  Accordingly, Plaintiff's motion for summary judgment on this

19  issue is denied.

20  ///

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 21

1    **C. WLAD Retaliation Claim**

2         Plaintiff's retaliation claim under the WLAD is identical in all material

3    respects to his § 1981 claim, with two exceptions: (1) Plaintiff must prove that his

4    protected activity was a "substantial factor" (as opposed to a "motivating factor")

5    in Defendant's adverse employment action; and (2) the "same decision"

6    affirmative defense is not available to Defendant.  *See Allison v. Hous. Auth. of*

7    *City of Seattle*, 118 Wash.2d 79, 85-96 (1991) (adopting "substantial factor"

8    standard and explaining plaintiff in retaliation case need not prove that his

9    protected activity was the "but for" cause of the adverse employment action).  For

10   the reasons discussed in conjunction with Plaintiff's §1981 claim, the Court

11   concludes that Plaintiff's WLAD claim must be decided by a jury.  Neither party is

12   entitled to summary judgment on this claim.

13   **D. After-Acquired Evidence Affirmative Defense**

14        Plaintiff has moved for summary judgment on Defendant's after-acquired

15   evidence affirmative defense.  The after-acquired evidence defense is an equitable

16   doctrine which limits a plaintiff's remedies for wrongful discharge when an

17   employer discovers that the plaintiff committed an act of wrongdoing prior to

18   being terminated and that the "wrongdoing was of such severity that the employee

19   in fact would have been terminated on those grounds alone if the employer had

20   known of it at the time of the discharge."  *McKennon v. Nashville Banner Publ'g*

1    *Co.*, 513 U.S. 352, 361-62 (1995).  "[T]he employer must establish not only that it

2    *could* have fired an employee for the later-discovered misconduct, but that it *would*

3    in fact have done so."  *O'Day*, 79 F.3d at 759.  If successfully proven, this defense

4    limits a plaintiff's recovery to "backpay from the date of the unlawful discharge to

5    the date the new information was discovered."  *McKennon*, 513 U.S. at 362.

6        Plaintiff asserts that Defendant cannot prevail on its after-acquired evidence

7    defense because (1) it knew of the alleged wrongdoing prior to the date on which

8    he was terminated; and (2) its investigators never interviewed him about the

9    alleged wrongdoing.  Neither argument is persuasive.  Contrary to Plaintiff's

10   assertions, Defendant did not "know" that Plaintiff had engaged in the alleged

11   wrongdoing prior to his termination.  Rather, Defendant had merely been presented

12   with *allegations* that Plaintiff had coached a subordinate employee on how to

13   falsify time records and submit bogus expense reports.  These allegations, which

14   were made in late October 2011, prompted Defendant's human resources

15   department to open an investigation into the matter.  This investigation was still

16   ongoing when Plaintiff resigned in lieu of termination on November 17, 2011.

17       The fact that Plaintiff was being investigated for independent wrongdoing

18   when he was terminated does not preclude Defendant from asserting the after-

19   acquired evidence defense.  As Defendant correctly notes, the defense is grounded

20   in equitable principles.  *McKennon*, 513 U.S. at 360-61.  Specifically, when

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 23

1    presented with an after-acquired evidence defense, a court must "balance[] the

2    public policy interest in eliminating unlawful discrimination against the equitable

3    principle that an employer should not be held liable for damages when the

4    employee invokes the aid of the court with unclean hands." *Rivera v. NIBCO, Inc.*,

5    364 F.3d 1057, 1071 (9th Cir. 2004).

6        Here, equity clearly favors Defendant.  To the extent that Plaintiff did in fact

7    teach a subordinate how to falsify time records and submit false expense reports,

8    he comes into court with unclean hands.  If this misconduct can be substantiated,

9    Plaintiff must not be permitted to hide it from the fact finder simply because

10   Defendant terminated him for an unrelated reason while its investigation was still

11   ongoing.  Defendant began its investigation promptly upon learning of the alleged

12   misconduct and completed it within a reasonable time.  Accordingly, this is not a

13   case in which Defendant had "reason to know" of the independent misconduct and

14   simply failed to take action until after the plaintiff was fired.  *Cf. McLaughlin v.*

15   *Innovative Logistics Grp., Inc.*, 2007 WL 313531 at * 11 (E.D. Mich. 2007)

16   (unpublished) (denying summary judgment on after-acquired evidence defense

17   where employer knew of employee's positive drug test three years prior to her

18   termination and never pursued the matter).

19       With regard to the merits of the defense, there are genuine issues of material

20   fact which preclude summary judgment in Plaintiff's favor.  As noted above,

Defendant has the burden of proving by a preponderance of the evidence that it would have terminated Plaintiff for having coached a subordinate to falsify time records and submit false expense reports had it not previously terminated him for the reasons at issue in this case.  This is an inherently fact-sensitive inquiry, and Defendant has presented sufficient evidence from which a jury could find that Plaintiff engaged in the alleged wrongdoing and that Defendant would, in fact, have terminated him for it.

Contrary to Plaintiff's assertions, the fact that he was never interviewed about these allegations does not preclude Defendant from satisfying its burden. Indeed, it is reasonable to assume that the vast majority of employers in Defendant's position never interview the terminated employee because the employee is no longer around to be interviewed.  If Plaintiff believes that his version of events would have carried the day, he may make that argument to the jury.  The fact that Plaintiff was never interviewed, however, does not estop Defendant from arguing that he *would* have been terminated for reasons independent of those for which he was actually terminated.  Accordingly, Plaintiff's motion for summary judgment on this affirmative defense is denied.

**E. Mitigation of Damages**

Plaintiff has moved for summary judgment on the issue of mitigation of damages.  Defense counsel conceded at the hearing that Defendant would not be

pursuing a mitigation of damages defense.  Accordingly, Plaintiff is entitled to summary judgment on this issue.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 67) is **DENIED**.

2. Plaintiff's Motion for Summary Judgment on Affirmative Defenses (ECF No. 71) is **GRANTED** as it pertains to the issue of mitigation of damages only.  The motion is **DENIED** in all other respects.

3. Defendant's Motion for Summary Judgment (ECF No. 75) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** April 24, 2013.



THOMAS O. RICE
United States District Judge